# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-323V
Filed: July 31, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | * |
| JAMES J. ROY and MARY ANN | * | UNPUBLISHED |
| BOGER, *as Administrators and Legal* | * | |
| *Representatives of the* ESTATE OF | * | |
| PAUL E. ROY, | * | Decision on Interim Attorneys' Fees and |
| | * | Costs; Denial; Reasonable Basis |
| Petitioner, | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | * | * |

*Ramon Rodriguez, III, Esq.*, Sands Anderson, PC, Richmond, VA, for petitioner.
*Adriana Teitel, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On March 9, 2017, James J. Roy and Mary Ann Boger ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program as administrators and legal representatives of the estate of Paul E. Roy ("Mr. Roy").[2] *See* Petition ("Pet."), ECF No. 1. Petitioners allege that Mr. Roy sustained injuries "secondary to his receipt of the seasonal influenza

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

and/or pneumococcal vaccines administered to him on October 2, 2014," at the age of 94. Pet. at 1. Petitioner has requested an award of interim attorneys' fees and costs. Petitioner's Motion is hereby **DENIED**.

## I. Procedural History

Petitioners filed their petition on behalf of Mr. Roy on March 9, 2017. Petition, ECF No. 1. This case was assigned to me on March 9, 2017. *See* ECF No. 4. Petitioners filed medical records, documentation regarding their appointment as administrators of Mr. Roy's estate, and an affidavit from counsel regarding failed attempts at securing Mr. Roy's complete medical records on May 10, 2017. Petitioner's Exhibits ("Pet. Ex.") 1-6, ECF No. 6. An initial status conference was held on May 25, 2017, after which respondent was ordered to file a status report identifying any outstanding medical records and indicating how he intended to proceed by July 24, 2017. Order, ECF No. 8. On July 24, 2017, respondent filed a status report requesting a 45-day extension to file his status report. Respondent's Status Report ("Resp. S.R."), ECF No. 9. This request was granted and respondent's deadline to file a status report was set for September 7, 2017. Non-PDF Order, dated July 24, 2017. On August 28, 2017, petitioners filed updated medical records. Pet. Ex. 7-13, ECF No. 11.

On September 7, 2017, respondent filed a status report identifying outstanding medical records and requesting that petitioners' obtain and file the records. Resp. S.R., ECF No. 13. He also requested that he be given 45 days following the filing of petitioners' records to file a status report updating the Court on his progress. *Id.* Petitioners' deadline to file the outstanding medical records was set for October 23, 2017 and respondent's deadline to file a status report was set for December 11, 2017. Non-PDF Order, dated September 8, 2017.

On October 23, 2017, petitioners filed a motion for extension of time to file the outstanding medical records requesting an additional 45 days. Motion, ECF No. 14. Petitioners' motion was granted and they were ordered to file the outstanding records by December 7, 2017. Non-PDF Order, dated October 23, 2017. Respondent's deadline to file a status report indicating how he intended to proceed was suspended. *Id.*

After a second extension of time, petitioners filed additional records on January 8, 2018. Pet. Ex. 14, ECF No. 19. Petitioners also filed a third motion for extension of time to file additional records by January 29, 2018. Motion, ECF No. 21. This motion was granted, and petitioners filed additional medical records and a Statement of Completion on January 29, 2018. Non-PDF Order, dated January 9, 2018; Pet. Ex. 15, ECF Nos. 22-24. Respondent was ordered to file a status report advising on the completeness of the record and indicating how he intended to proceed by March 15, 2018. Non-PDF Order, dated January 29, 2018.

On March 15, 2018, respondent filed a status report advising the record was sufficiently complete and requesting a deadline to file his Rule 4(c) Report as he intended to continue to defend this claim. Resp. S.R., ECF No. 25. Accordingly, a deadline for respondent's Rule 4(c) Report was set for April 30, 2018. Non-PDF Order, dated May 16, 2018. Respondent filed his Rule 4(c) Report on April 30, 2018, stating petitioners had failed to offer a reputable scientific or medical theory establishing that the flu vaccine can cause cellulitis leading to pneumonia and death or that it did

so in this case. Respondent's Report ("Resp. Report") at 10, ECF No. 26. Respondent also noted that petitioners have not established that the alleged cellulitis was caused by the administration of the flu vaccine and not the pneumococcal vaccine petitioner received on the same day. *Id.* 10-11. Respondent further argued petitioners have not provided a scientific or medical theory establishing that the flu vaccine can significantly aggravate generalized weakness, fatigue, unsteadiness of gait, and other neurological signs and symptoms or that it did so in this case. *Id.* at 12.

Petitioners were ordered to file an expert report and supporting medical literature by July 2, 2018. Non-PDF Order, dated April 30, 2018. After two extensions of time, petitioners filed an expert report from Dr. Patrick Holly on November 2, 2018. Motions, ECF Nos. 27-28; Pet. Ex. 16, ECF No. 29. Petitioners also filed a motion for extension of time requesting an additional 45 days to file a second expert report and supporting medical literature. Motion, ECF No. 31. Petitioners' motion was granted and their deadline to file an additional expert report was set for December 17, 2018. Non-PDF Order, dated November 5, 2018.

On December 17, 2018, petitioners filed an expert report authored by Dr. Eric Gershwin and supporting medical literature. Pet. Ex. 17-21, ECF No. 32. Respondent was ordered to file a responsive expert report by March 19, 2019. Non-PDF Order, dated December 18, 2018. On March 19, 2019, respondent filed a motion for extension of time requesting an additional 60 days to file his expert report. Motion, ECF No. 34. Respondent's motion was granted and his deadline to file an expert report was set for May 20, 2019. Non-PDF Order, dated March 20, 2019.

On May 1, 2019, petitioners filed the instant Motion for Interim Attorneys' Fees and Costs ("Mot. Int. Fees"). ECF No. 35. Petitioners requested attorneys' fees in the amount of $14,453.35 and attorneys' costs in the amount of $1,408.37, for a total of $15,861.72. *Id.* at 10. Petitioners explained that when the petition was filed on March 9, 2017, Dr. Rodriguez was employed with Rawls McNelis, which is now doing business as Rawls Law Group ("RLG"). *Id.* at 1-2. On August 7, 2017, Dr. Rodriguez transitioned his practice to Sands Anderson, PC, where he is currently employed. *Id.* In the instant motion, petitioners request reimbursement of attorneys' fees and costs incurred while Dr. Rodriguez was employed by RLG. *Id.* Petitioners submitted that, "[b]ecause RLG employees are no longer involved in this case[,] RLG is experiencing financial hardship and delay for work billed by Dr. Rodriguez…". *Id.* at 7. Petitioners further submitted that "they meet the criteria for interim fees and costs requested herein due to the two-plus year delay and hardship RLG has and would continue to otherwise face…". *Id.* at 14.

On May 19, 2019, respondent filed a Motion to Amend the Schedule, seeking to suspend his deadline to file a response to Dr. Gershwin's report and requesting a status conference be scheduled in order to discuss how the parties should proceed in this case. Motion, ECF No. 38. Respondent's motion pointed out the inconsistencies between the incompleteness of the causal theories put forth by Drs. Holly and Gershwin in their expert reports. *Id.* at 1.[3]

---

[3] A status conference was held on July 9, 2019, during which several issues with Mr. Roy's medical records and Dr. Gershwin's expert report were discussed. Order, ECF No. 40. Petitioners were ordered to file an expert report from Dr. Gershwin addressing the highlighted issues or a status report indicating how they intend to proceed by September 9, 2019. *Id.*

On May 29, 2019, respondent filed a response to petitioner's motion. Response, ECF No. 30. Respondent questioned whether petitioners had a reasonable basis in bringing this claim, noting that "petitioners have not provided evidence that demonstrates Mr. Roy's flu vaccination, rather than his pneumococcal vaccination, caused his cellulitis." Response at 7. Respondent further noted that petitioners have not "presented a cogent theory connecting his flu vaccination, cellulitis, and death, or demonstrated how his clinical course was altered as a result of his vaccination." *Id.* at 7-8. Ultimately, respondent stated that "the current case record fails to establish that a reasonable basis exists for petitioners' claim." *Id.* at 8. Respondent "respectfully recommend[ed] that, if the Special Master finds that there is a reasonable basis for petitioners' claim and that an award of interim fees and costs is permissible in this case, then she exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 11.

Petitioner did not file a reply. This matter is now ripe for decision.

## II. Applicable Law and Analysis

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

Good faith is a subjective inquiry that questions whether petitioner's counsel exercised adept professional judgement in determining whether a petitioner may be entitled to compensation. *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). In the absence of a showing of bad faith, petitioners in the Vaccine Program are "entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Petitioners have made no showing of bad faith; therefore, I presume that petitioners have brought this claim in good faith.

### A. Reasonable Basis

Reasonable basis is an objective standard determined by evaluating the sufficiency of the medical records in petitioners' possession at the time the claim is filed. "Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs.*, No. 99-564V, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). However, the Federal Circuit recently denied an award of attorney's fees based on petitioner's lack of reasonable basis. *See Simmons v. Sec'y of Health & Human Servs.*, 875 F. 3d 632, 636 (Fed. Cir. 2017). In *Simmons*, the Federal Circuit determined that petitioner lacked reasonable basis for filing a claim when, at the time of filing: (1) petitioner's counsel failed to file proof of vaccination, (2) there was no evidence of a diagnosis or persistence injury allegedly related to a vaccine in petitioner's medical records, and (3) the petitioner had disappeared for approximately two years prior to the filing of the petition and only resurfaced shortly before the status of limitations deadline on his claim expired. *See id.* at 634-35. The Federal Circuit specifically stated that the reasonable basis inquiry is objective and unrelated to counsel's conduct prior to filing a claim. The Court

4

consequently affirmed the lower court's holding that petitioner's counsel lacked reasonable basis in filing this claim based on the insufficiency of petitioner's medical records and proof of vaccination at the time the petition was filed. *Id*. at 636.

In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . Under the objective standard articulated in Simmons, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs*., No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden [in demonstrating reasonable basis] has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id*. Moreover, the special master may consider various objective factors including "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs*., 138 Fed. Cl. 282, 289 (2018).

In their application for interim fees, petitioners submitted that they have met the reasonable basis requirement by virtue of the expert reports authored on their behalf by Drs. Holly and Gershwin. Mot. Int. Fees at 6. Petitioners' are correct that an expert opinion supported by medical literature bolsters the basis for a claim. However, as highlighted in respondent's response to petitioners' motion, petitioners' experts have not "presented a cogent theory connecting [Mr. Roy's] flu vaccination, cellulitis, and death, or demonstrated how his clinical course was altered as a result of his vaccination." *Id*. at 7-8. Moreover, during a recent status conference, several issues regarding Mr. Roy's medical records were discussed, including: (1) how Mr. Roy's fall on October 4, 2014 was caused by his vaccinations as compared to Mr. Roy's previous falls due to ongoing progressive bilateral lower extremity weakness; (2) how Mr. Roy's fall and/or cellulitis resulted in his decline five months later; and (3) how the UTI and community acquired pneumonia he suffered from 5 months after his vaccination were causally related to his vaccinations and/or cellulitis.

Petitioners' counsel is currently working with Dr. Gershwin to address the above-referenced issues. In the context of Mr. Roy's complicated medical history and serious comorbidities, reasonable basis cannot be determined until the above inconsistences are addressed and the experts have had the opportunity to provide opinions based on the clarified record.

Once the entitlement phase of this matter has concluded, petitioner may file an application for attorneys' fees and costs, at which time reasonable basis will be determined.

## B. Interim Attorneys' Fees and Costs

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs*., 609 F.3d 1372, 1375 (Fed. Cir. 2010); *see Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1352 (Fed. Cir. 2008). The Court in *Avera* held that interim fees may be awarded "in appropriate circumstances." 515 F.3d at 1351. The Court then

listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Interim fees are the exception rather than the rule; indeed, "there is not a presumption of entitlement to interim fees." *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 300 (2011). Under the circumstances of this case, interim fees are not warranted. There are neither "protracted proceedings" nor "costly experts," and petitioners have not made a "special showing" that an award of interim fees and costs is necessary to avoid undue hardship.

Petitioners' Motion cites the "two-plus year delay" in the proceedings as justification for an award of interim fees. However, the overall amount of fees requested does not appear to be unduly burdensome, RLG did not incur expert costs on the petitioners' behalf, and any costs going forward will be paid by Dr. Rodriguez's current firm, Sands Anderson. Furthermore, counsel has not withdrawn from representing the petitioners in this matter, but merely changed law firms. Dr. Rodriguez can protect the fees and costs incurred by his prior firm by including them in a subsequent application for fees and costs, submitted at a more appropriate time. As petitioners do not meet any of the circumstances typically invoked in awarding interim fees, I find that interim fees are not appropriate at this juncture.

Based on the foregoing, petitioners' Motion for Interim Attorneys' Fees and Costs is **DENIED**. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

> **s/ Mindy Michaels Roth**
> Mindy Michaels Roth
> Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.